UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Florence DE LOY, Defendant-
Appellant.

No. 27900

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1970.

Patrick McGrotty, Miami, Fla., court-appointed, and Jeffrey M. Fine, Miami, Fla., for appellant.

William A. Meadows, Jr., U. S. Atty., J. V. Eskenazi, Asst. U. S. Atty., Miami, Fla., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

In this Dyer Act case the problem of a voluntarily loquacious defendant presents once again the question of the proper limits of the *Massiah* [1] rule.

The defendant, Joseph Florence DeLoy, was found guilty by a jury of interstate transportation of a stolen motor vehicle and was sentenced to two years in prison. He now appeals, asserting that certain evidence introduced at his trial was inadmissible. The sole issue presented is the extent to which *Massiah*, interdicts the admission into evidence of post-indictment incriminating admissions by a defendant. We do not find *Massiah's* proscriptions so pervasive as to require reversal in the circumstances presented by this case.[2]

On December 11, 1967, Special Agent MacNamara of the FBI spoke to DeLoy

---

1. Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.

2. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have

directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Company, 5 Cir. 1969, 417 F.2d 526, Part I.

at a used car lot in Miami, Florida, where DeLoy was attempting to sell a 1967 Cadillac. MacNamara advised DeLoy that he had information indicating that the Cadillac had been stolen and gave DeLoy the full warning required by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In spite of the warning DeLoy talked freely, exhibited documents in support of his title to the car, and consented to a search of the automobile. In his examination of the automobile Agent MacNamara found, as is typical in Dyer Act cases, the usual disparity between the serial number on the door post and the numbers on the frame and transmission of the car. DeLoy was not arrested or detained at that time, however, because MacNamara was unable to locate a stolen vehicle report on the car. Subsequently, on January 8, 1968, DeLoy was arrested in Lynn, Massachusetts, for the interstate transportation of this vehicle. He was indicted on January 17, 1968, and on February 16, at his arraignment, he entered a plea of not guilty.

On April 12, 1968, DeLoy, who was not then in custody, appeared voluntarily and uninvited at the Miami office of the FBI and asked to see Agent MacNamara. MacNamara thoroughly advised DeLoy of his rights, including the right to consult with his attorney, and the right to have his attorney present during any interview. MacNamara testified that he also advised DeLoy to call his attorney and was told by DeLoy that he had already done so. DeLoy executed the FBI waiver of rights form which included a statement that he did not want a lawyer. At this meeting DeLoy made incriminating statements to Agent MacNamara.

On May 31, 1968, DeLoy again appeared at the Miami office of the FBI voluntarily and uninvited and again requested to speak with Agent MacNamara. He was thoroughly advised of his rights and again executed a waiver of rights form. At this interview DeLoy furnished MacNamara with additional incriminating evidence.

At trial DeLoy objected to the introduction of MacNamara's testimony concerning the statements made at the April and May interviews. The trial court overruled the objection and admitted MacNamara's testimony. DeLoy now appeals to this court, asserting that the introduction of this evidence was reversible error.

Defendant's argument is apparently based on the Supreme Court's decision in Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, which he reads as a blanket prohibition on the introduction in evidence of statements made by an accused after indictment and without the presence of counsel. In *Massiah* the Court was concerned with the admissibility of incriminating statements made by a defendant to a confederate and overheard by police officers via a radio transmitter hidden on the confederate without the defendant's knowledge. The Court held that the admission of this evidence violated Massiah's Sixth Amendment right to counsel:

" * * * We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. * * * " 377 U.S. at 206, 84 S.Ct. at 1203.

*Massiah,* however, left unanswered a basic question: Are all post-indictment statements made without the presence of counsel inadmissible or are such statements tainted only when there exists some "special circumstances" such as the surreptitious radio surveillance there involved?

The Third Circuit, relying on the Supreme Court's per curiam reversal of State v. McLeod, 1962, 1 Ohio St.2d 60, 203 N.E.2d 349, rev'd per curiam, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682, adopted a broad reading of *Massiah.* United States ex rel. O'Connor v. New Jersey, 3 Cir.1969, 405 F.2d 632; cert.

denied, Yeager v. O'Connor, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240. That court concluded that the *Massiah* rule rendered inadmissible all post-indictment statements obtained without counsel regardless of the circumstances:

"By its disposition of McLeod the Court has said, in effect, that *Massiah* commands an absolute right to counsel after indictment, thereby vitiating the validity of all oral communications between the defendant and the police made in the absence of counsel. The 'investigatory v. accusatory' test of *Escobedo* and the 'in custody' test of *Miranda,* employed to determine when the right to counsel attaches, have no application once the indictment has formally stamped the suspect as *the* defendant; only a clear, explicit, and intelligent waiver may legitimate interrogation without counsel following indictment." 405 F.2d at 636.

■ Other circuits, however, have taken a more restrictive view of *Massiah,* allowing the admission of post-indictment statements voluntarily and deliberately made by a properly warned defendant who was not tricked into speaking by some deliberate act of the investigating officers. Arrington v. Maxwell, 6 Cir.1969, 409 F.2d 849; Reinke v. United States, 9 Cir.1968, 405 F.2d 228; Coughlan v. United States, 9 Cir.1968, 391 F.2d 371, cert. denied, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139; United States v. Garcia, 2 Cir.1967, 377 F.2d 321, cert. denied, 389 U.S. 991, 88 S.Ct. 489, 19 L.Ed.2d 484; United States v. Gardner, 7 Cir.1965, 347 F.2d 405, cert. denied, 382 U.S. 1015, 86 S.Ct. 626, 15 L.Ed.2d 529; United States v. Accardi, 2 Cir.1965, 342 F.2d 697, cert. denied, 382 U.S. 954, 86 S.Ct. 426, 15 L. Ed.2d 359. This circuit has plainly adopted the more restrictive reading of *Massiah,* requiring, in effect, that there be some circumstance more than the bare absence of counsel before a defendant's post-indictment statement is rendered inadmissible. United States v. Venere, 5 Cir.1969, 416 F.2d 144; Wilson v. United States, 5 Cir.1968, 398 F.

2d 331, cert. denied, 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712.

In the instant case there is not even a suggestion of any additional circumstance which would render DeLoy's statements inadmissible. No clandestine activity, surreptitiousness, or other "dirty pool" was engaged in by the government agents. The defendant himself who was not then in police custody solicited and encouraged the April and May interviews. Moreover, in addition to these meetings DeLoy also initiated interviews with other agents in New York, Boston and Miami. The defendant's own estimate was that he visited the FBI office in Jamestown, New York, no less than twenty or thirty times. Moreover, the record indicates that DeLoy repeatedly telephoned the Miami office of the FBI and was outraged over the fact that his calls were not always answered. Despite the defendant's obvious desire to speak to the government agents, these agents repeatedly gave him complete *Miranda* warnings and encouraged him to contact his lawyer. The defendant never alleged that he did not freely, voluntarily, and on his own motion appear at the Miami office of the FBI and intentionally make the statements now in question. Defendant's own attorney stated in open court that DeLoy voluntarily went to the Miami office and voluntarily made the statements to the FBI in April and May.

■ In these circumstances we hold that DeLoy's statements to Agent MacNamara were admissible in evidence. He was not coerced, cajoled, or tricked into an involuntary statement. The government did not elicit, solicit, or even suggest a statement and did not otherwise treat the defendant unfairly. He was allowed to speak only after a full and adequate *Miranda* warning on each occasion. We do not comprehend *Massiah* as a sweeping mandate tainting all post-indictment statements made by a defendant without the presence of his counsel. Police officers are not made constitutionally deaf to the uncoerced, insistent, and untricked statement of a

properly warned defendant. Whatever the precise boundaries of the *Massiah* rule, here not even the threshold was reached.

The judgment of the court below is affirmed.