## TIMOTHY PARKS v. STATE OF MARYLAND

[No. 136, September Term, 1980.]

*Decided November 10, 1980.*

The cause was submitted on briefs to MOYLAN, MOORE and LOWE, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Thomas J. Saunders, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General,*

Andrew L. Sonner, State's Attorney for Montgomery County, and Barry A. Hamilton, Assistant State's Attorney for Montgomery County, for appellee.

LOWE, J., delivered the opinion of the Court.

The evidentiary issue in the case before us exemplifies a tendency of some prosecutors who "overtry" their cases intending, perhaps, to err if at all on the side of prudence. But too much is not always prudent. A careful carpenter, for example, will resist the temptation to add that one last nail which will frequently split the board, weakening, rather than reinforcing, the structure he is trying to build. A careful lawyer also knows when to stop hammering, although the hairline fractures are not always immediately apparent. Unless the same craftsman defends his structure on appeal, the subtle damages of overbuilding a case may continue to escape him. While the structure withstood it in this case, the value of that last nail was hardly worth the risk — but that is much easier to see in the contemplative light of retrospect.

In this case, originally tried by a jury in the Circuit Court for Montgomery County, a 13-year-old girl was the victim of assault and battery, assault with intent to rape and a third degree sexual offense by appellant who was one of several men between the ages of 18 and 32 who had picked her up in a car. She was molested thereafter in various ways, at different times and at several locations.

Appellant was tried separately from the other participants, some of whom testified in his case, some of whom did not. In addition to submitting evidence of the corpus delicti of the crime, the State established appellant's criminal agency by a wealth of evidence. Appellant's brother and his wife established appellant's presence, explaining that he (the witness) and his brother (the appellant), in addition to one John Norris Anderson,[1] while on an aborted errand, had stopped and picked up the victim who was on a sidewalk and was apparently drunk. Appellant's brother inculpated Anderson directly and appellant inferentially, by

---

1. Anderson v. State, No. 1218 (Ct. of Sp. App., filed May 23, 1980) (unreported).

describing their conduct during the drive to the apartment of a friend, Ronald Harrison Reemsnyder,[2] and after leaving the apartment building. When the vehicle was stopped at a deserted military base, the witness stayed in the car, but his testimony inferentially and corroboratively inculpated the other four male passengers, including Anderson and appellant.

An associate of appellant's also testified corroboratively in regard to appellant's criminal agency and further inculpated him by reciting an admission indicative of guilt. Another witness who came upon the scene when attracted by the victim's screams, testified to his observations which also circumstantially inculpated appellant. Testimony of a microscopic examination of hair samples taken from clothing at the scene of the crime revealed that the hairs could have come from appellant. A final witness, Clifford Tragesor, was permitted to testify to a conversation that he had had with John Norris Anderson while both were detained in a jail cell. His testimony was limited to Anderson's statements concerning only Anderson's involvement in the criminal conduct. It is this testimony that brought about the appeal here, despite there having been no testimony from Tragesor about conversations with appellant or with Anderson that implicated appellant directly.

The purpose and the relevance of the testimony was primarily to corroborate the testimony of the other witnesses who had inculpated Anderson and appellant, as well as the other participants in their joint venture, thus corroborating not only appellant's criminal agency inferentially, but tending to prove the corpus delicti by repeating Anderson's admissions of his own criminal conduct which the panoply of witnesses' testimony showed was committed while in the car with appellant and the others.[3]

---

2. See Reemsnyder v. State, 46 Md. App. 249 (1980).

3. The judge ruled:

"I will permit that evidence, but both the State and the defense will understand that if Mr. Tragesor starts to talk about what Anderson said about Parks' involvement we are in serious trouble.

144

— the right of confrontation —

The single question on appeal relates to the admissibility of Tragesor's testimony.

"Did the court err in allowing a witness to testify concerning the admission of a codefendant?"

While recognizing that the evidence was admitted under a proper exception to the hearsay rule (admissions against penal interest), appellant attempts to create a constitutional obfuscation of an already cloudy area of criminal law.

"The question which needs to be resolved involves the viability of the *Bruton* [*v. United States*, 391 U.S. 123 (1968)] doctrine now that Maryland has adopted the declaration against penal interest exception. Does that exception nullify *Bruton*, or can they be harmonized?" (Footnote omitted.)

It appears that this was precisely the attack made in *Dutton v. Evans*, 400 U.S. 74 (1970). Reciting the *Dutton* facts Judge Morton noted in *McDowell v. State*, 31 Md. App.

Therefore, it is my recommendation that the State's Attorney and the defense attorney sit down with Mr. Tragesor in a small private room and make that clear to him in no uncertain terms.
MR. HAMILTON [prosecutor]: I have done that preliminarily, Your Honor, but I will take the Court's recommendation. I told him last night that this was a possibility and to be refining his thoughts so he could testify in that manner.
THE COURT: Well, I would permit you to lead somewhat, that is when you ask him the question it will be what if anything did Anderson, did John Anderson say about he, John Anderson's participation in these events.
MR. HAMILTON: If I may, a clarification, what about what Anderson said about Reemsnyder's involvement?
THE COURT: That does not have the same indicia. I will limit it to what Anderson said about Anderson.
MR. MADDEN [appellant's attorney]: As I understand it, as far as the relevancy part is concerned, the Court finds that this could be that limited statement of Tragesor could be relevant to the extent that it may be corroborating?
THE COURT: Corroborative or tend to offer proof of the corpus delicti."

The restriction upon the testimony admitted all but obliterates the significance of the Bruton (v. United States, 391 U.S. 123 (1968)) problem appellant strains to raise. We will address it nonetheless.

652, 660 (1976), *cert. denied,* 278 Md. 727 (1976), that the factual posture of *Dutton* was substantially identical to that of *McDowell.*

> "In *Dutton v. Evans,* Evans had been convicted in a Georgia court of participating in the murder of three policemen. In the course of the trial, a witness for the state, named Shaw, was permitted to testify that Williams, an accomplice of Evans, had told him [Shaw] while he was in prison awaiting trial that if it had not been for Evans, he, the accomplice Williams, would not 'be in this now.' Objection to the testimony was made on the ground that the introduction of this hearsay testimony was in violation of Evans' right of confrontation. The objection was overruled and the issue before the Supreme Court was whether Evans' murder conviction should be set aside because of the admission of this testimony."

We find the facts here even more apposite to *Dutton,* while the evidence now in question is even less damaging to appellant than that which was admitted in *Dutton.* It further appears that *Dutton* expressly dispelled the same *Bruton* obfuscation attempted here.

> "There was not before us in Bruton 'any recognized exception to the hearsay rule,' and the Court was careful to emphasize that 'we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause.' [Citation omitted.]
>
> It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. But this Court has never equated the two, and we decline to do so now." 400 U.S. at 86 (footnotes omitted).

The significance of *Dutton* is the Court's distinguishing that which the *Dutton* case *did not* involve:

> "This case does not involve evidence in any sense

'crucial' or 'devastating,' . . . . It does not involve the use, or misuse, of a confession made in the coercive atmosphere of official interrogation, . . . . It does not involve any suggestion of prosecutorial misconduct or even negligence, . . . . It does not involve the use by the prosecutor of a paper transcript, . . . . It does not involve a joint trial, . . . . And it certainly does not involve the wholesale denial of cross-examination, . . . ." *Id.* at 87.

Mr. Justice Stewart, for the plurality, went on to note that:

"Of the 19 other witnesses, the testimony of but a single one is at issue here. That one witness testified to a brief conversation about Evans he had had with a fellow prisoner in the Atlanta Penitentiary. . . . His testimony, which was of peripheral significance at most, was admitted in evidence under a coconspirator exception to the hearsay rule long established under state statutory law." *Id.* at 87 (footnote omitted).

This indicated, we believe, the lack of significance of that testimony in the perspective of an otherwise strong case. The language demonstrates rather clearly that even if it had been erroneously admitted its effect may well have been harmless.

It also appears that *Dutton* indicates with equal clarity that whether these evidentiary admissible out-of-court admissions of codefendants to a third party are constitutionally admissible must be decided each on its own facts. *Id.* at 86-88.[4] Taking that as the message of the plurality, we begin with the presumption that the judge's exercise of discretion is presumed correct, *Mathias v. State,* 284 Md. 22, 28 (1978), *cert. denied,* 441 U.S. 906 (1979); but see *Hughes v. State,* 288 Md. 216 (1980), and we may not

---

4. Not only did the plurality emphasize that it confined itself to deciding the case before it, *id.* at 86, but also it reemphasized that distinction by repeating that the evidentiary admissibility "in the circumstances of this case did not violate the Constitution." *Id.* at 88.

under our own appellate procedure, reverse the trial judge's discretion unless it is abused.

Procedurally, before addressing the constitutional admissibility, we must first assure ourselves that it was evidentially admissible under an exception to the hearsay rule. Here the evidence was allowed in via the exception for statements that are against penal interest which is clearly under the aegis of Maryland evidentiary rules. *Jacobs v. State,* 45 Md. App. 634 (1980).

We have already addressed the corroborative relevancy of the statement, and so long as it tended toward "Getting The Right Man", *Jacobs, supra* at 645, it is not the Court's role to judge the degree of persuasive effect, only that it does or does not tend to get the right man. It is then necessary simply to determine that the out-of-court declarant is "presently unavailable." *Id.* at 653. John Norris Anderson, the declarant, had been tried and convicted by the time this case was being tried, but his conviction was on appeal. It is well-settled that "invocation of the privilege against compelled self-incrimination is a sufficient showing of unavailability." *Id.* (citation omitted). Anderson was thus, for purposes of testifying, "presently unavailable." The trial judge, then, did not abuse his discretion from an evidentiary view.

Using some of the pertinent criteria addressed in *Dutton,* we next must determine whether the constitutional rules of fair play have been complied with, *i.e.,* as referred to by Judge Moylan in *Jacobs,* the "Marquis of Queensberry Rules." *Id.* at 645. As *Dutton* points out, while similar values are designed for protection by both evidentiary and constitutional rules, they are neither mutually inclusive, nor mutually exclusive. *Dutton, supra* at 81-82.

The confrontation issue in *Dutton* arose

> "because the jury was being invited to infer that Williams [a codefendant] had implicitly identified Evans as the perpetrator of the murder when he blamed Evans for his predicament." *Id.* at 88.

In the case at bar the hearsay testimony admitted identified

only the declarant, a codefendant not then on trial, as a perpetrator. Without other evidence from observations of the other witnesses the testimony would not even inferentially have implicated appellant. Indeed, it would appear that appellant Parks barely slips under the constitutional confrontation issue, if at all. Since the result is the same, we too will err if at all on the side of prudence and address the *Dutton* issue.

Briefly noting the Supreme Court's analysis we find here that many of the factors considered in *Dutton* are either not related to the instant facts or are indicative that there was no denial of appellant's right of confrontation, *e.g.,*

1) the evidence was not in any sense " 'crucial' " or " 'devastating' ";
2) although the statement asserted a "past fact," it did not identify appellant as a perpetrator;
3) the declarant and the declaration indicated personal knowledge;
4) it was unlikely that his recollection was faulty; and
5) since the statement was spontaneous and against his own personal interest he appeared to have no motive to lie.

See *Dutton* at 87-89.

When we consider the significance of the testimony, *id.* at 87, it is so "peripheral" that it is difficult to understand the substantial effort made by the State to have injected in its case such an unsettled, appealable issue of this nature. In our view — which has no weight itself — the weight of the testimony elicited was so insignificant in relation to the whole, that had it been admitted in error, that error would have been of questionable harm at worst, even under the test of *Dorsey v. State,* 276 Md. 638 (1976).

— right to counsel —

It should be emphasized that both evidentially and

constitutionally our efforts thus far have been to assure the trustworthiness of the statement made by the out-of-court declarant. Appellant here is expressly concerned as well with the trustworthiness of the witness who related the declarant's comments. *Cf. Dutton, supra* at 87.

Although still related to the Sixth Amendment, appellant's second concern presumably shifts from the confrontation clause to the right to counsel clause, contending as he does, that Tragesor was a police agent seeking to ingratiate himself to better bargain his own criminal problems. His brief succinctly sets forth his contention in this regard:

> "Appellant submits that Officer Beane solicited Tragessor's [sic] aid as of March 18 and that throughout the events he was a state agent. Therefore his questioning of Appellant and Anderson was improper and the statements should have been excluded. *See, State v. Blizzard,* 278 Md. 556, 366 A.2d 1026 (1976)."

See also *United States v. Henry,* 447 U.S. 264, 65 L. Ed. 2d 115 (1980).

The issue as raised relates to the right to counsel. We need but remind appellant that no statement of his to Tragesor was admitted in this case. Whether Anderson's right to counsel was violated is neither shown nor asserted, and would not be relevant in regard to his statements as related to appellant in any case. Appellant has no standing to invoke Anderson's constitutional rights.

*Judgments affirmed.*
*Costs to be paid by appellant.*