DONALD RAY WATSON *v.* STATE OF MARYLAND

[No. 740, September Term, 1976.]

*Decided March 16, 1977.*

---

382

The cause was argued before POWERS, MOORE and LISS, JJ.

*Gerald A. Kroop, Assigned Public Defender,* for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Thomas Morrow, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

The appellant, Donald Ray Watson, was convicted at a court trial by Judge Edward A. DeWaters of robbery with a deadly weapon and use of a handgun. It is from those judgments that this appeal is filed.

The case arises out of an armed robbery which occurred in Baltimore County on the afternoon of January 5, 1976. Ms. Gertrude Libowitz, office manager for Bond Distributing Company, had just returned from the bank to the parking lot adjoining her employer's building when she was accosted by two men — one a tall man armed with a gun, the other, shorter in height — who ordered her to get back into the car. She refused and the taller man pushed her against the car knocking off her glasses. He then reached into the car and grabbed her purse and two empty bank bags which she had picked up at the bank. The two robbers then got into a car which was some 40 or 50 feet away from Ms. Libowitz's car, and a third man drove them away from the scene. Ms. Libowitz had the presence of mind to note the license tag of the getaway vehicle and the police were called. She gave the investigating officer a description of the persons involved in the incident and the information concerning the car.

Later that same day Donald Ray Watson, the appellant, was arrested. The appellant did not raise the issue of probable cause for the arrest at the trial below nor was the issue raised in this appeal.

Detective John W. Hopkins of the Baltimore County Police Department gave Watson his Miranda warnings, advised him of the reason for his arrest and ultimately transported him to police headquarters. At police headquarters Detective Hopkins called the appellant's mother, explained why her son was being held and that he would be charged. Mrs. Watson asked whether her son needed a lawyer and the detective replied in the affirmative. Hopkins then told Watson that he was hunting for three suspects and that if Watson told the truth, he, Hopkins, would advise the state's attorney of Watson's cooperation. Watson then gave a statement to Hopkins in which he said that his mother had left for work at 6 a.m. and had left the car because she could not start it. At about 12:15 p.m. he persuaded a friend to give the car a "hot shot" and the appellant left the keys in the car, the motor running, and when he returned the car had been moved. He walked around the neighborhood and located the car in an apartment house parking lot three or four blocks away from his home. He was just driving the car off the lot when the police stopped him. Over objection the appellant's motion to suppress this statement was denied. No issue as to the admissibility of this statement was raised on this appeal.

In the interim, the appellant employed counsel who represented the appellant in the trial below and on appeal. A second preliminary hearing was scheduled, and at this hearing Detective Hopkins suggested to defense counsel that he was not sure of the appellant's involvement in the robbery and that it might be useful if the appellant would submit to a polygraph test.

Defense counsel discussed the suggestion with the accused and he agreed to take the test. Counsel advised his client not to give any statements beyond that required by the polygraph examination and instructed Detective Hopkins not to question his client after the completion of the test.

The detective agreed to call defense counsel after the examination and let him know the result of the test.

A few days later the appellant took the test and was advised by the examiner that he had failed it.[1] The appellant then advised the examiner that he wanted to talk to Detective Hopkins. Hopkins attempted to reach appellant's defense counsel by telephone on two occasions, but he was unable to do so. He told this to the appellant and then stated, "I understand you have something to tell me, but, first of all, I'm going to read you your rights again." Hopkins testified that he advised the appellant of each of his rights and that appellant stated he understood them. The appellant said that he wanted to talk to Hopkins because he "had something to get off his chest."

The appellant took the stand and testified that he did not request to see Hopkins and that he gave Hopkins no statement at all. The trial court ruled that the appellant's oral statement allegedly made after the polygraph examination was admissible into evidence. In that statement appellant allegedly admitted to being with the two men who robbed Ms. Libowitz, but he denied knowing that they intended to commit the robbery.

The sole question raised by the appellant on this appeal is whether, under all the circumstances, the inculpatory statement made by the accused was the product of a free and unconstrained will which had not been overborne or compelled. We believe the statement was voluntarily made after the accused had been fully advised of his rights and we shall affirm.

The appellant suggests five grounds as the basis for his contention that the statement given to Officer Hopkins was not a free and voluntary statement made by the accused after he had been advised of his rights under *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), and had knowingly waived those rights. The first and third grounds will be considered together because they essentially

---

1. At argument counsel agreed that appellant did in fact fail the polygraph test.

allege the same basis for error on the part of the trial court. The appellant suggests that the statement was involuntarily made by him as a result of the coercive atmosphere generated by the lie detector examination. *Johnson v. State,* 31 Md. App. 303, 305, 355 A. 2d 504, 506 (1976), is dispositive of this contention. In that case Judge Lowe for this Court in discussing a similar factual situation said:

> "It is apparent that the use of the deception testing device was intended to produce a psychological effect upon the accused in order to obtain the relevant facts if known by appellant. Appellant's expressed reason for confessing does not gainsay the test's effectiveness. It is clear, however, that the use of such a procedure for that purpose would not as a matter of law require the exclusion of a confession so obtained . . . ." (Citations omitted)

We are not impressed with his contention that the polygraph examination undermined his belief in his own innocence and his ability to assert that innocence. The appellant admits that he voluntarily agreed to take the lie detector test. He argues, however, that once he was advised that he had failed the polygraph test the adverse psychological effect made it impossible for him to exercise his free and unconstrained will, and that any waiver of his rights could not have been voluntarily and intelligently made. We point out, however, that even under the burden of his alleged hopeless position, occasioned by his failing of the test, the statement given to Officer Hopkins was at least partially exculpatory. While the accused admitted being with the perpetrators of the robbery, he maintained that he had no knowledge that a robbery was going to be committed. Such an ingenious statement is hardly to be characterized as that of an individual who does not grasp the meaning of his right to counsel and is therefore incapable of voluntarily waiving that right. In any case, the trial court was charged with the responsibility of considering the evidence and determining whether the State had met its burden of proof

in establishing beyond a reasonable doubt that the statement was freely and voluntarily made, and that the accused's Miranda rights were intelligently waived. It evidenced its conclusion as to voluntariness and waiver when it entered the guilty verdicts.

The appellant next argues that the statement was improperly admitted into evidence because it was made in violation of his right to counsel. He testified that he had asked for his attorney before giving the final statement to the police. Officer Hopkins stated that before he took the statement from the appellant he again read to him his Miranda rights which included the right to counsel and the right not to answer any questions. The officer denied that Watson had asked for his lawyer and stated that after the Miranda rights had been reread to the appellant, "[H]e understood, and he wanted to talk with me, he wanted to get something off his chest." This conflict in the testimony raised an issue of fact to be determined by the trier of the facts who is the judge of the credibility of witnesses. *Williams v. State*, 22 Md. App. 714, 325 A. 2d 427 (1974); *Szewczyk v. State*, 7 Md. App. 597, 256 A. 2d 713 (1969); *Watson v. State*, 6 Md. App. 134, 250 A. 2d 311 (1969). The trial court believed the officer, and upon our own independent review we agree.

The appellant's final arguments may be combined into the contention that once an accused is represented by counsel he cannot be questioned out of counsel's presence absent a waiver by the accused in the presence of counsel. Appellant suggests that ethically and morally it was improper for the officer to take a statement from him when he knew that counsel had cautioned appellant not to do anything other than answer the questions of the polygraph examiner. Appellant is on untenable ground legally as well as morally and ethically.

The right to have counsel present during an interrogation is a right of the defendant and not a right of defendant's counsel. If a waiver occurs, it is the *accused's waiver of his right to counsel* which must be determined. We believe the trial court was correct when it stated:

"Now simply because one has an attorney, that does not mean that he cannot ignore the advice of counsel. It does not mean that he cannot call the police and ask to give a statement, and the testimony of Detective Hopkins is that this is what occurred, that he did, again, advise him of his rights, and that a statement was given, and I accept the testimony of Detective Hopkins . . . ."

*Sabatini v. State,* 14 Md. App. 431, 287 A. 2d 511 (1972), *cert. denied,* 265 Md. 742 (1972); *Lamb v. Commonwealth,* 227 S.E.2d 737 (Va. 1976).

In the recent case of *State v. Blizzard,* 278 Md. 556, 366 A. 2d 1026 (1976), *rev'g, Blizzard v. State,* 30 Md. App. 156, 351 A. 2d 443 (1976), Judge Smith speaking for the majority of the Court discussed the conflict which has arisen in the interpretation of the holdings of the Supreme Court in *Massiah v. United States,* 377 U. S. 201, 84 S. Ct. 1199, 12 L.Ed.2d 246 (1964), and *McLeod v. Ohio,* 381 U. S. 356, 85 S. Ct. 1556, 14 L.Ed.2d 682 (1965). He pointed out that the minority view holds that:

"[O]nce a criminal defendant has either retained an attorney or had an attorney appointed for him by the court, any statement obtained by interview from such defendant may not be offered into evidence for any purpose unless the accused's attorney was notified of the interview which produced the statement and was given a reasonable opportunity to be present."

*United States ex rel. O'Connor v. New Jersey,* 405 F. 2d 632 (3rd Cir. 1969), *cert. denied,* 395 U. S. 923 (1969).

The majority of this country's courts, however, have adopted the position that *Massiah* does not taint all post-indictment statements made by a defendant without the presence of his counsel. As was stated in *United States v. DeLoy,* 421 F. 2d 900, 902 (5th Cir. 1970), "Police officers are not made constitutionally deaf to the uncoerced, insistent and untricked statement of a properly warned defendant."

After a thorough analysis of the conflicting cases, the Court of Appeals reached the conclusion that Maryland would follow the majority and hold that in the absence of coercion or trickery, which would of themselves negate complete voluntariness, a volunteered statement given in the absence of defendant's counsel is admissible.

In this case the accused chose to ignore the advice of his counsel. Once advised that he had failed the polygraph test it might well have appeared to the accused that it was in his own self-interest to offer an explanation for his presence at the scene with the other participants in the robbery. The trial court found that the statement made by the appellant was his free and voluntary statement made after an intelligent waiver of his right to counsel. The record sustains that conclusion.

*Judgments affirmed.*
*Costs to be paid by appellant.*