(No. 55192.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CURTIS J. BROWNELL, Appellant.

*Opinion filed May 18, 1983.*

Peter B. Nolte and Paul E. Gaziano, of Rockford, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Michael B. Weinstein, Marcia L. Friedl, and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE CLARK delivered the opinion of the court:

On September 13, 1978, Curtis J. Brownell was found guilty, by the circuit court of Boone County, of the murder, aggravated kidnaping and rape of Louise Betts. The State requested a sentencing hearing for the purpose of imposing the death penalty. The defendant waived a jury proceeding and was sentenced by the court to death. Upon appeal to this court, the convictions for murder, aggravated kidnaping and rape were affirmed and we found that the sentences imposed for the offenses of aggravated kidnaping and rape were justified. In sentencing the defendant to death, the trial court found that two aggravating factors existed. While this court upheld the finding of the trial court that a murder was committed in the course of the felonies of aggravated kidnaping and rape, the death sentence was vacated because this court found that one of the aggravating factors—"that the murdered individual was an eyewitness or possessed other material evidence against the defendant" (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)(7)) did not exist. Since this court found that one aggravating factor was erroneously included in the court's sentencing decision, the sentence of death was vacated and the cause remanded to the circuit court of Boone County for resentencing. 79 Ill. 2d 508, 544.

On remand, prior to the second sentencing hearing, the defendant filed a number of prehearing motions.

Specifically, he filed a motion to declare the death penalty statute unconstitutional, to preclude a capital sentencing hearing based upon a promise of the prosecutor not to ask for the death penalty, and to fund the testimony of expert witnesses. He made a motion for change of venue, a motion challenging *voir dire* questions, and a motion to excuse for cause any juror who knew of the prior death sentence. He also made a motion for a ruling that the State had the burden of proof beyond a reasonable doubt in all matters that arise at a capital sentence hearing. All of the motions made by the defendant were denied.

The defendant waived a determination by the jury of the existence of a statutory aggravating factor, and stipulated that a statutory aggravating factor had been found beyond a reasonable doubt.

On April 17, 1981, the jury impaneled to hear evidence in mitigation at the second phase of the second sentencing hearing concluded that there were no mitigating factors sufficient to preclude the imposition of the death penalty. On May 18, 1981, the trial court again entered a judgment and sentence order of death on the verdict. The defendant appealed directly to this court (Ill. Const. 1970, art. VI, sec. 4(b); 73 Ill. 2d R. 603; Ill. Rev. Stat. 1979, ch. 38, par. 9—1(i)), alleging a number of errors.

We first address the issue of whether the prosecuting attorney was precluded from requesting a capital sentencing hearing based upon a promise of the prosecutor not to ask for the death penalty.

The State contends that the issue is waived because it was not raised in the first direct appeal (79 Ill. 2d 508), until a supplemental argument was filed following the filing of a petition for rehearing. On remand, the trial court did consider the issue raised as one of the defendant's prehearing motions. Because the matter was raised

and considered in the trial court, we find that it is not waived and is properly before us on appeal.

Since our original opinion was handed down in this case (79 Ill. 2d 508), this court has issued an opinion in the death penalty appeal of *People v. Walker* (1981), 84 Ill. 2d 512, which we find controlling in our disposition of the issue we now address.

In *People v. Walker* (1981), 84 Ill. 2d 512, the defendant, Eugene A. Walker, Jr., had initially pleaded guilty to charges of murder, attempted murder, armed robbery and armed violence. Walker had made that plea pursuant to an agreement with the prosecuting attorney that the defendant would receive a 60-year sentence. The defendant made a subsequent motion to vacate the plea, which was granted. However, when the case proceeded to trial, the defendant entered an unnegotiated plea of guilty. Following a sentencing hearing, the circuit court sentenced the defendant to death. This court found it necessary to vacate the death sentence, finding the State's Attorney's request that the death sentence be imposed violated the due process clause of the fourteenth amendment of the United States Constitution. This court found such a holding was required to prevent "a vindictive prosecutor from punishing a defendant for doing something the law allows him to do." 84 Ill. 2d 512, 525.

The defendant in the instant case cites to Justice Ryan's concurring opinion in *Walker* in asserting that the due process clause of the fourteenth amendment and the eighth amendment proscription against cruel and unusual punishment require that the death sentence in the case at hand be vacated. In his concurring opinion, Justice Ryan concluded that imposing the death penalty on Eugene A. Walker, Jr., "would constitute an arbitrary application of the statute, unguided by any standards except the whim of the prosecutor," and therefore would constitute "a violation of the due process clause of both

the State and Federal constitutions, as well as cruel and unusual punishment proscribed by the eighth amendment of the Federal Constitution." (84 Ill. 2d 512, 529 (Ryan, J., concurring).) Justice Ryan explained:

"Under the facts of this case, when the State's Attorney negotiated a guilty plea from the defendant in exchange for a 60-year sentence on the murder charge, death was not a possible penalty since it could not be imposed without the State's Attorney's request for a penalty hearing. The prosecutor, having exercised the discretion vested in him by statute, informed the court, the defendant and the public that death was not an appropriate penalty in this case and the court, by concurring in the negotiated plea, confirmed this conclusion. However, within three months the prosecutor decided that death was an appropriate penalty and requested the penalty hearing, which activated the statutory machinery ultimately enabling the court to sentence the defendant to death. The defendant was the same; the offense was the same; no new evidence had surfaced; and the conviction was obtained in the same way, by a plea of guilty. Now, just three months later, the appropriate penalty, the price tag, for this offense was no longer 60 years, but death. The prosecutor explained to the court: '[A]nd prosecutors, your Honor, make decisions. Somebody has to. And we make mistakes. Mine was in not seeking the death penalty earlier. I was wrong then. I am right now.'

\* \* \*

\*\*\* Death is a drastic penalty. Its finality demands certainty in that the prosecutor's decision to request a penalty hearing must have a rational basis. His explanation that his previous recommendation of a 60-year sentence was a mistake does not satisfy what the Supreme Court in the above cases [*Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954; *Gardner v. Florida* (1977), 430 U.S. 349, 51 L. Ed. 2d 393, 97 S. Ct. 1197; *Woodson v. North Carolina* (1976), 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978; *Roberts v. Louisiana* (1976), 428 U.S. 325, 49 L. Ed. 2d 974, 96 S. Ct. 3001] has deemed essential. If death was the appropriate penalty in this case, the State's Attorney should not have

vacillated but should have sought it following the first guilty plea. Thus, it does not appear that there is a meaningful basis for distinguishing between the imposition of the death penalty on the second guilty plea and the foreclosing of it on the first, when nothing in the case had changed except that the prosecutor stated he made a mistake.

\*\*\*

It is a denial of due process to subject the defendant facing death to the vacillation of the prosecutor's office \*\*\*. *When the prosecutor forgoes his right to seek the death penalty, enters into plea negotiations, and reaches an agreement that is acceptable to him and the court, notions of basic fairness and due process prevent him from seeking the death penalty at a later date absent a change in circumstances beyond a mere recognition that he made a mistake.*" (Emphasis added.) 84 Ill. 2d 512, 529-33, Ryan, J., concurring.

In reviewing the record it is uncontested that at approximately 10 p.m. on April 1, 1978, the State's Attorney of Boone County offered to the defendant's counsel an agreement whereby the State's Attorney would not seek the death penalty if the defendant would confess in writing to the murder of Louise Betts. Defense counsel conferred with the defendant regarding the proposed agreement and the defendant did not accept the offer.

One more meeting took place in the early morning hours of April 2, 1978, with the defendant, defense counsel and two Winnebago County detectives. At the conclusion of that meeting at approximately 1 a.m., the defendant was again asked if he wished to talk to the police. The defendant said that he needed more time. At this point, the meeting ended.

Approximately one hour later, at 2 a.m. on April 2, 1978, the defendant indicated that he wanted to talk, said that he did not want counsel to be present, that he understood his rights and then confessed.

In the first opinion issued in this case (79 Ill. 2d 508),

the court outlined the events prior to April 1, 1978, and the details of what happened on April 1, and April 2, 1978.

"By 6:15 p.m. on March 31, 1978, the defendant was represented by counsel. At that time the defendant appeared in a lineup, concerning the Winnebago County offense. The defendant met with counsel before and after the lineup. After the lineup, Gary Arbisi, a Winnebago County detective investigating the previously referred to offenses informed the defendant that he could speak to the police whether his attorney was present or not. The defendant stated he would follow counsel's advice. Arbisi started to say something else but counsel prevented him from doing so.

The next day, April 1, 1978, at approximately 6 p.m., Arbisi and another detective went to the defendant's home to speak with the defendant's wife concerning information they had received that the defendant had told Mrs. Brownell he was guilty of murder. Mrs. Brownell asked to speak with her lawyer. When counsel arrived he advised Mrs. Brownell not to speak to the detectives. Mrs. Brownell eventually agreed to talk to the detectives, but only if she could first speak with the defendant. The detectives then arranged a visit at the jail between the defendant and his wife. The defendant met separately with counsel, then with his wife and, later, again with counsel. Mrs. Brownell agreed to tell the police, 'everything' but, after a phone call with the defendant's stepfather, an attorney, she declined to make a statement.

The defendant's counsel, after his later meeting with the defendant, stated to a detective that he thought negotiations should begin with the State's Attorney to waive the death penalty in any ensuing proceeding. Counsel then met with the State's Attorneys of Boone and Winnebago counties and two assistant State's Attorneys until 10 p.m. An offer was made by the State's Attorneys that if the defendant made a written confession of murder, the death penalty would not be sought at trial. Thereafter the defendant, after conferring again with counsel, declined the offer.

A final conference took place among the defendant, defense counsel, and Detective Arbisi and Rollins. Arbisi

asked the defendant if he wished to speak to the detectives. Counsel advised the defendant not to do so. Arbisi then asked counsel for permission to speak to the defendant. Counsel granted permission. Arbisi told the defendant that while the defendant did not have to speak to the police, if he changed his mind and wanted to speak to the police, with or without counsel present, the defendant could do so. The defendant said he would follow counsel's advice. A few minutes later, on the way to his cell, the defendant was asked again by Arbisi whether he wished to talk. The defendant answered that he needed more time. Counsel informed the other attorneys that the defendant needed more time to consider their offer. It was approximately 1 a.m. on April 2, 1978, when all parties dispersed.

Approximately one hour later, the defendant told the jailer he wanted to talk to the police. Detectives Arbisi and Packard were summoned. When they met the defendant in an interview room, Arbisi asked the defendant whether the defendant desired to have counsel present. The defendant said he did not want counsel to be present. The defendant was advised of his *Miranda* rights. The defendant said he understood his rights and signed a statement to that effect. He then gave an incriminating written statement to the police." 79 Ill. 2d 508, 517-19.

It is clear that the prohibition against cruel and unusual punishment prohibits the arbitrary imposition of the death penalty based upon caprice or emotion. Rather, the decision to impose the death penalty must be, and appear to be, based upon reason and not caprice or emotion. *Gardner v. Florida* (1977), 430 U.S. 349, 51 L. Ed. 2d 393, 97 S. Ct. 1197.

We feel that the reasoning Justice Ryan articulated in his concurring opinion in *People v. Walker* (1981), 84 Ill. 2d 512, is persuasive in our resolution of the issue at hand. The State's Attorney made a conscious decision to agree not to seek the death penalty if the defendant would provide him with a confession. Once such a conscious decision

has been made by the prosecuting attorney, we feel that it is incumbent on the State's Attorney to abide by the agreement absent a change in circumstances. Otherwise, we run the risk that the change in position by the prosecuting attorney in seeking the death penalty is based upon caprice or emotion.

Basic fairness and due process require that the State's Attorney be bound by his promise not to seek the death penalty. Between 10 p.m. on April 1, 1978, and August 29, 1979, when the State's Attorney requested the death penalty be imposed, not one circumstance had changed. No reason has been offered for the prosecutor's vacillation. The defendant gave the State's Attorney what he had bargained for—a confession. The confession having been obtained, the State has offered no conceivable justification for not abiding by that promise. The defendant was given no indication that the offer not to seek the death penalty had lapsed simply because a few hours time had passed from the hour at which the proposed agreement had been made known to the defendant. No one told the defendant that the State's Attorney had changed his mind. Nothing in the record shows that the offer had been revoked. We must prevent vindictiveness or the appearance of vindictiveness on the part of the prosecuting attorney. (*People v. Walker* (1981), 84 Ill. 2d 512; see *Blackledge v. Perry* (1974), 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098.) When, in the absence of any other change in circumstances, the prosecutor changes his mind and asks that a defendant be put to death after agreeing that he would not seek the death penalty, that reversal creates an appearance of a vindictive motive on the part of the prosecutor. The prosecutor must be held to his part of the bargain.

This court said in *People v. Walker* (1981), 84 Ill. 2d 512, that "[t]here is also the appearance of vindictiveness, at the minimum to the individual defendant, when a prosecutor changes his mind in the absence of any alteration in

the facts other than a defendant's invocation of a right the law plainly affords. Under any test, then, the prosecutor here is required to point out objective facts which justify a change of mind, as well as to put the defendant on notice prior to withdrawal of his plea what he will face." 84 Ill. 2d 512, 524.

The State's Attorney would have us construe the agreement in strict contractual terms. But we are not attempting to sort out those bids that failed to meet the midnight deadline of a general contractor's invitation to bargain. Rather, we are talking about a situation where the State has agreed not to seek the penalty of death for Curtis Brownell.

The State proffers no credible answer as to why the State's Attorney should not be held to his part of the agreement. The death sentence of Curtis Brownell cannot stand. Because our resolution of this issue is dispositive, it is unnecessary for the court to consider the other alleged mistakes raised by defense counsel concerning the defendant's sentencing. The sentence of death is vacated and the cause is remanded to the circuit court of Boone County for resentencing of the defendant. In the resentencing of Curtis Brownell, the death penalty is not to be considered as an alternative.

*Sentence vacated; cause remanded, with directions.*