THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CURTIS JAY BROWNELL, Defendant-Appellant.

Second District   No. 82—155

Opinion filed April 11, 1984.

308

G. Joseph Weller, John J. Barrett, and Paul J. Glaser, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Curtis Jay Brownell, was charged by information filed February 10, 1978, in Winnebago County with rape, attempted

murder, aggravated kidnaping (based on rape), armed robbery and armed violence (based on rape). (Ill. Rev. Stat. 1977, ch. 38, pars. 11— 1, 8—4, 10—2, 18—2, 33A—2.) The defendant, pursuant to negotiations, pleaded guilty to rape, attempted murder and aggravated kidnaping. He was sentenced to 50 years for rape, 25 years for aggravated kidnaping and 50 years for attempted murder, the attempted murder sentence to be consecutive to the other two sentences, which were to be concurrent, and all three sentences to be consecutive to sentences entered in a case against the defendant in Boone County.

The defendant's motion to withdraw his guilty plea was denied. The defendant appealed, and this court reversed and vacated the judgments and sentences entered against him on those three offenses, and vacated and set aside the defendant's guilty pleas thereto. The cause was then remanded to allow the defendant to plead anew and for further proceedings consistent with this court's opinion. *People v. Brownell* (1980), 86 Ill. App. 3d 697.

On remand, after reinstatement of the remaining two charges which were dismissed pursuant to the defendant's original plea agreement, the defendant waived a jury trial and after a bench trial held on November 23 and 24, 1981, the defendant was found guilty (and neither insane nor mentally ill) on all five charges. On February 4, 1982, the defendant was sentenced to 50 to 150 years for each of the five offenses, the sentence for attempted murder to be consecutive to those for the other four offenses, which were to be concurrent, and all five sentences to be "consecutive with any penalty that's been imposed in Boone County under 78—CF—37."

Three issues are presented in this appeal: (1) whether the defendant's inculpatory statements should have been suppressed; (2) whether the defendant's sentences should be vacated and the cause remanded for resentencing because the murder sentence imposed in Boone County was vacated by the Illinois Supreme Court; and (3) whether the defendant's conviction and sentence for armed violence must be vacated as being a lesser-included offense of rape.

A detailed recitation of the facts is not necessary for an understanding of the issues. The offenses charged were committed against a woman seven months pregnant whom the defendant abducted from a laundromat. He drove her to a secluded area, raped her, and then attempted to kill her by running over her with his car. Due to the amount of the snow on the ground, and her position in front of the car, she was not crushed and managed to run to safety at a nearby residence. Neither she nor her unborn baby sustained any critical or

permanent injury.

### I. SUPPRESSION OF STATEMENT

The defendant claims his written statement was improperly admitted at trial because it was involuntary under the fifth and fourteenth amendments to the United States Constitution and under article I, section 10 of the Illinois Constitution. (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 10.) Further, he claims his statement was obtained in violation of his right to counsel under the sixth and fourteenth amendments to the United States Constitution, and under article I, section 8 of the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, sec. 8.

Initially, the State asserts the defendant has waived consideration of this issue because it was not specifically included in his post-trial motion as required by section 116—1 of the Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1981, ch. 38, par. 116—1.

The post-trial motion filed here indisputably was a "boiler-plate" motion; not only was it nonspecific as to the errors alleged, but twice it referred to errors occurring in the context of a "jury" trial when it was a bench trial. It has been held that failure to pursue one of the devices for challenging a confession—either by preliminary hearing on a motion to suppress or by appropriate objection thereto at the trial—ordinarily precludes consideration of the matter on appeal. (*People v. Taylor* (1965), 33 Ill. 2d 417, 421; *People v. Calderon* (1981), 101 Ill. App. 3d 469, 477.) Further, notwithstanding the general requirement that issues not raised in the defendant's post-trial motion cannot be urged as a ground for reversal on appeal (*People v. Pickett* (1973), 54 Ill. 2d 280), the issue nevertheless may be preserved if the defendant objected at trial (*People v. Moody* (1979), 75 Ill. App. 3d 674), or, in general, if the issue has been brought to the trial court's attention, the trial court has ruled on it, and the defendant would be prejudiced if the error is established as well founded. *People v. Washington* (1980), 85 Ill. App. 3d 522.

■■ The defendant here did challenge the admissibility of the statement in his pretrial motion to suppress. The court denied the motion, and admitted the defendant's written statement during the trial over the defendant's timely objection thereto. Consequently, the court had two opportunities to rule on the matter, and was thereby substantially afforded the opportunity to prevent the potential error before trial and to reconsider the alleged error at trial. Thus, the essential purpose which a post-trial motion serves was met. See *People v. Jackson* (1981), 84 Ill. 2d 350, 359.

■ As a second argument for precluding review of this issue, the State argues the Illinois Supreme Court's decision in *People v. Brownell* (1980), 79 Ill. 2d 508, should serve to support a rejection of the claim made here. In that appeal, the defendant also raised the issue of the admissibility of his confession. However, that case was concerned only with the defendant's confession of the murder of Louise Betts in Boone County. The defendant's statement regarding the victim of the offenses here was the last of a total of three statements which were given by the defendant to the police during the same time frame. As far as can be determined from reading the court's decision in that case, the defendant challenged the admissibility of his statement on the same grounds he now asserts. The State points out no "constitutionally significant" facts occurred between the time the defendant gave his statement in that case and the time he made the instant statement which would merit any further review of the issue.

The defendant, however, does not concede that the decision in *People v. Brownell* (1980), 79 Ill. 2d 508, is dispositive here. He points out that decision omits any discussion of several aspects of the case which are part of the record here. The first aspect he points to was a remark by prosecutor Gemignani that the defendant's attorneys, Messrs. Gaziano and Pumilia, could "cool their heels awhile" when he was informed they wished to see the defendant. Further, after that time, when the defendant was brought downstairs, he was informed his wife and his attorney were there. When the defendant hesitated as to whom to see first, defense counsel began yelling at the defendant through a glass partition in the attorneys' conference room that the defendant should talk to him first, and the defendant did talk with him first.

Another aspect the defendant contends was not discussed in that prior opinion is the "new evidence" that the defendant's clergyman, Father Denson, had been asked by the police officer who let the priest in to see the defendant, to ask the defendant "whether or not he will talk to us [the police]."

Insofar as the first aspect raised by the defendant is concerned, the record of the first suppression hearing in this case shows the circumstance of a heated argument occurring between the defendant's attorneys and the prosecutor, which prompted the "cool their heels" remark. A stipulation between defense attorney Pumilia and the prosecutor, Gemignani, was related to the court during the first suppression hearing. Fairly construed, the stipulation indicated the prosecutor had no intention of depriving the defendant of his right to see counsel. Pumilia stipulated that Gemignani had no knowledge of the

coincidence of events (*i.e.,* Pumilia and Gaziano's request to see the defendant, and the presence of the defendant's wife in the visitors' room), and that there was no attempt on Gemignani's part to have the defendant see his wife before his attorney. Just prior to the stipulation, the record shows there was a denial by Detective Arbisi on redirect examination that he stated to the defendant "*either* [you can see] your wife *or* your lawyer." (Emphasis added.) Consequently, it does not appear that incident, even if it had been raised in the prior appeal of the Betts murder, would have had any effect on the court's decision as to the voluntariness of the defendant's statement there. The defendant here is bound by his attorneys' stipulation during the first suppression hearing that those actions of the prosecutor did not amount to an attempt to keep the defendant from consulting with his attorney and he will not be allowed to argue those circumstances now in support of his appeal.

Neither party argues specifically whether the supreme court's *Brownell* decision may be construed as *res judicata,* or collateral estoppel, insofar as it may relate to this case. There is no identity in the causes of action between that case and this one. The records of the suppression hearing here are limited to the subject of the offenses committed against the victim here; therefore, we assume a separate suppression hearing was held with regard to the defendant's confession of the Betts murder. This court has not been provided with the report of proceedings of the Betts suppression hearing, or with a copy of the briefs filed with the supreme court in that cause. Consequently, it is not entirely clear what evidence the supreme court had available to it when it decided the issue presented there. In any case, it does not appear that the supreme court's *Brownell* decision would be *res judicata* as to the instant case, nor would collateral estoppel be applicable since the issue in that case was the voluntariness of the Betts confession, not the confession in the instant cause.

The doctrines of waiver and collateral estoppel do arise here, however, within the context of the case itself. When this case was returned to the circuit court to allow the defendant to plead anew and for further proceedings (*People v. Brownell* (1980), 86 Ill. App. 3d 697), the defendant filed the same motion to suppress statements as he had in the first proceeding. The court declined to reconsider the motions as they had previously been ruled upon. (*Cf. People v. Webb* (1982), 109 Ill. App. 3d 328 (doctrine of law of the case precluded the trial court from holding *de novo* suppression hearing when order suppressing evidence had been specifically reversed upon the State's interlocutory appeal and the cause remanded for "further proceed-

ings").) Subsequently, defense counsel learned while talking with the defendant's appellate counsel on the Betts conviction that when Father Denson arrived at the jail pursuant to the defendant's request, the police asked him to ask the defendant whether or not he would talk with them. Defense counsel, although he was aware at the first suppression hearing that the defendant spoke with Father Denson, stated he was unaware of what he considered was the improper police request made to Father Denson. Accordingly, counsel sought reconsideration of the motion to suppression the basis of this "new evidence."

The circuit court permitted a hearing to be held as to this new evidence, but ultimately denied the defendant's motion to reconsider. In ruling, the court stated it found the defendant's statement was not the result of coercion, and that the defendant—fully aware of attorney Pumilia's advice that he not speak to the officers—voluntarily did so anyway. The court also expressed uncertainty about having heard the purported new evidence, since the court's review of the prior suppression hearing showed that both sides were aware of Father Denson's visit with the defendant at the time of the first hearing. Defense counsel admitted he did know Father Denson was there, but that "it just never occurred" to him to ask about his conversation with the defendant since it was a privileged communication.

The defendant's motion to withdraw his guilty plea prior to taking the first appeal of his convictions in this case did not specify any error in the court's denial of his first motion to suppress. Supreme Court Rule 604(d) specifically provides that "[u]pon appeal any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived." Supreme Court Rule 604(d), as amended August 9, 1983, effective October 1, 1983; *People v. McKean* (1981), 94 Ill. App. 3d 502.

In *People v. Savory* (1982), 105 Ill. App. 3d 1023, 1027, it was stated:

"It is true that these doctrines [*res judicata,* law of the case, waiver and collateral estoppel] bar relitigation of an unappealed order denying a motion to suppress, but they only do so in the absence of exceptional circumstances. (*People v. Armstrong* (1973), 56 Ill. 2d 159, 161, 306 N.E.2d 14, 15; *People v. Eckmann* (1978), 60 Ill. App. 3d 300, 302, 376 N.E.2d 751, 752.)"

The "exceptional circumstances" found there which allowed relitigation of the issue was that the defendant was seeking to suppress evidence of a different day's conflicting statements which statements were not relied upon by the prosecution in the first trial, hence, any attempt to appeal the matter in that first appeal would have been

considered moot. In *People v. Hopkins* (1972), 52 Ill. 2d 1, 4, there is an indication of what also might be considered "exceptional" circumstances:

> "The notion of mutuality, which so largely characterizes the use of the doctrine [of collateral estoppel] in civil cases, cannot be given full play in criminal cases. Moreover, a defendant, unlike the prosecution, is not allowed an immediate appeal from an adverse ruling upon a motion to suppress. He cannot review that ruling until after he has been convicted and sentenced. And for a variety of reasons he might not wish to appeal, or as in the case of an acquittal at the first trial, he might not be able to do so."

In its decision in *People v. Eckmann* (1978), 60 Ill. App. 3d 300, 302, this court stated:

> "In the absence of additional evidence or exceptional circumstances, the doctrine of collateral estoppel bars the relitigation of an order sustaining or denying a pretrial motion to suppress evidence. *People v. Armstrong*, 56 Ill. 2d 159, 161 (1973); *People v. Holland*, 56 Ill. 2d 318, 321 (1974). See also *People v. Hopkins* 52 Ill. 2d 1, 4 (1972); *People v. Grant*, 38 Ill. App. 3d 62, 69 (1976)."

█ The record here does not show that an exceptional circumstance exists. The defendant failed to include the issue initially in his motion to withdraw his guilty plea, thereby waiving it under the provisions of Supreme Court Rule 604(d). Further, the fact of the police request to Father Denson is not—in our opinion—the type of "additional" evidence which had "become available" after the first hearing which would allow relitigation of the issue. Under the circumstances, the trial court correctly denied the defendant's motion to reconsider his motion to suppress on the basis of this procedural ground alone.

█ On the merits, the defendant contends the tactics employed by the State in this case—"asking [the defendant] to talk without his lawyer, arranging for him to meet with his wife before allowing him to meet with his lawyer, offering to forego the death penalty in the Betts murder case, again suggesting that the [defendant] meet with the police without his lawyer, and finally, requesting the defendant's priest to act on their behalf"—amounted to interrogation or its functional equivalent under *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682. As a consequence of this, he claims, his "right to cut off questioning" was not "scrupulously honored" (*Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321); thus, his fifth amendment rights were violated.

Defendant additionally claims the State's course of conduct here was calculated to interfere with his sixth amendment right to the assistance of counsel due to the State's repeated efforts to get him to talk without his attorney present, including one instance in which Detective Arbisi advised the defendant that he could decide to talk with the police at any time with or without his counsel present. Defendant notes the right to the assistance of counsel is "of first importance in our administration of criminal justice" (*People v. Knippenberg* (1977), 66 Ill. 2d 276, 288), and the government may not deliberately elicit an incriminating statement from a suspect who is under indictment and represented by counsel. *United States v. Henry* (1980), 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183.

After clarifying several misstatements made by the defendant concerning the record, the State responds that a part of the record passed over by the defendant in his argument shows that at about 2:05 a.m. on April 2, 1978, the defendant told the jailer that he wanted to talk to the police. This occurred about one hour after he had been placed in an isolation cell at 1 a.m. on April 2 due to his earlier suicide threat. Father Denson's visit with the defendant took place about 11 or 11:30 p.m. on April 1, and the defendant spoke with his attorney between the end of that visit and 1 a.m. the next morning. When Detective Arbisi and Sergeant Packard were summoned, they advised the defendant of his *Miranda* rights, and he signed a written waiver. He also specifically rejected the officers' offer to call his attorney, indicating that his attorney would stop him from saying the things he wanted to say.

These facts support the conclusion that it was the defendant himself who reinitiated the dialogue with the police, and that his statement was not the result of alleged improper or repeated police interrogation.

In a similar case, *People v. Morgan* (1977), 67 Ill. 2d 1, the defendant's claim that his fifth amendment right to counsel had been violated was rejected because the court found the defendant himself had initiated the dialogue, and had stated that he did not want an attorney because he might get him confused. Thus, the defendant's intent to waive his previously asserted right to counsel was evident. The State points out that case is completely consistent with the seminal case on this issue, *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. That case held that the State had not met its heavy burden of proving a valid waiver of the defendant's rights where the defendant's statement resulted from police-initiated questioning after the defendant's fifth amendment right to counsel

had been asserted, but not honored, prior to the police-initiated questioning, even though the defendant had again been advised of his rights prior to giving the statement.

The State additionally contends the facts here also show a valid waiver by the defendant of his previously asserted sixth amendment right to counsel when he refused the offer to have counsel present, and indicated his attorney would try to stop him from saying what he wanted to say. In support, the State cites *People v. Aldridge* (1980), 79 Ill. 2d 87, which was decided under the sixth amendment right-to-counsel principle. In that case, the court upheld as valid the defendant's waiver of his right to counsel because the facts showed he intentionally relinquished a right which was known to him. There the defense counsel had sought to enjoin any questioning of his client in his absence. The court denied the injunction, noting that the officers had been sufficiently apprised that the defendant had an attorney and did not want to be questioned without his assistance. In this case, defense counsel, in the presence of defendant, Detective Arbisi, and Sergeant Rollins, told the defendant that he did not want him to talk with the police. Nevertheless, approximately one hour later, the defendant asked to speak with the police, and declined the offer of the police to contact his lawyer. As the *Aldridge* court observed, quoting *Watson v. State* (1977), 35 Md. App. 381, 386, 370 A.2d 1149, 1152, " 'The right to have counsel present during an interrogation is a right of the defendant and not a right of defendant's counsel.' " (*People v. Aldridge* (1980), 79 Ill. 2d 87, 92.) Thus, as in *Aldridge*, the facts here show the defendant intentionally relinquished a right which was known to him.

The various police actions complained of here did not amount to "interrogation" or its functional equivalent as discussed in *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682. In none of the instances cited was the defendant actually asked a question which would have been "reasonably likely to elicit an incriminating response." Nor, in fact, was any incriminating response—either inculpatory or exculpatory—given by the defendant until at least an hour after his last 1 a.m. contact with his attorney, and after defendant himself expressly stated, on his own initiative, that he wished to talk to the police without his counsel present.

The defendant cites in support of his sixth amendment claim *United States v. Henry* (1980), 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183, and *United States v. Morrison* (3d Cir. 1979), 602 F.2d 529, *rev'd on other grounds* (1981), 449 U.S. 361, 66 L. Ed. 2d564, 101 S. Ct. 665. We conclude that those cases are distinguishable. In *Morri-*

*son*, the Court of Appeals dismissed an indictment against the defendant where, although they were aware the defendant was represented by counsel, agents of the Drug Enforcement Agency effected a wilful and unjustified interference with the defendant's sixth amendment right to counsel. The agents *inter alia* repeatedly made "surprise" visits at the defendant's house and questioned her about various matters including her drug source; told her she was facing a stiff jail term; denigrated the competency of her chosen counsel and indicated that his charges for legal services were excessive. The court concluded the agents' actions exhibited a pattern of conduct calculated to intrude upon and destroy the attorney-client relationship. The instances cited at bar, however, do not amount to such a "pattern." In *Henry*, government agents enlisted the aid of, and paid, an informant incarcerated in the same cell block with the defendant for relating to them incriminating statements made by the defendant, for which statements the informant had been instructed to be on the alert. The court there found the defendant's sixth amendment right to counsel had been violated by the government-created situation which it believed amounted to deliberate elicitation of incriminating statements from the defendant without the assistance of counsel. The record here fails to show any such subterfuge either existed or was intentionally created.

Accordingly, we conclude the court did not err in denying the defendant's motion to suppress and the defendant's written statement was properly admitted at trial.

## II. RESENTENCING

██ The defendant contends that his sentences cannot stand because the trial court ordered the sentences to be served consecutively to "any penalty that's imposed in Boone County under 78—CF—37." That case, noted above, was the Louise Betts murder case. He asserts that the court, in imposing the sentence, considered the fact that he had received the death penalty in Boone County for the murder. He notes that penalty was recently vacated by the Illinois Supreme Court (*People v. Brownell* (1983), 96 Ill. 2d 167), and argues, therefore, that he is entitled to a new sentencing hearing.

In primary support, he cites *People v. Buckley* (1977), 44 Ill. App. 3d 1038, for the proposition that a defendant is entitled to a new sentencing hearing where a prior conviction and sentence which was relied upon by the trial court in imposing sentence has been reversed. In *Buckley*, the sentence imposed on the defendant for robbery which was to be served concurrently with a sentence imposed on an earlier

indecent liberties conviction, was vacated and the cause remanded for resentencing when the indecent liberties conviction was reversed and remanded for a new trial. The appellate court noted that the indecent liberties conviction was included in the defendant's presentence report and obviously was considered by the court. In view of the reversal of that conviction, and even though the sentence as imposed may have been warranted in view of the other information in the presentence report, the court's opinion was that the robbery sentence should be reconsidered.

*Buckley* is readily distinguishable. In this case, the defendant's earlier murder conviction was not reversed; only the death penalty sentence was vacated. As the State notes, the supreme court affirmed the defendant's murder conviction in 1980. (*People v. Brownell* (1980), 79 Ill. 2d 508.) The *Buckley* court relied upon the authority of *United States v. Tucker* (1972), 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589, and *People v. Chellew* (1974), 20 Ill. App. 3d 963. The "real question" in *Tucker* was whether the sentence imposed would have been different if the sentencing judge had known that two of the defendant's prior convictions had been unconstitutionally obtained. *United States v. Tucker* (1972), 404 U.S. 443, 448, 30 L. Ed. 2d 592, 597, 92 S. Ct. 589, 592; see also *People v. Merneigh* (1981), 101 Ill. App. 3d 536.

Here, however, the sentencing judge was aware the defendant had been convicted of murder and that the death penalty had been imposed. The later vacation of the penalty did not change the fact of the conviction, nor does it appear the court specifically was influenced in any way by the sentence. After imposing sentence for the instant offenses, and despite the knowledge the death penalty had been imposed in the earlier case, the court nevertheless stated the instant sentences would run consecutively to the Boone County sentences. The court obviously was cognizant that a death sentence is subject to automatic review by the Supreme Court. Ill. Const. 1970, art. VI, sec. 4(b); 87 Ill. 2d. R. 603; Ill. Rev. Stat. 1981, ch. 38, par. 9—1(i).

Another case relied upon by the defendant in support of his position here is also distinguishable. In *People v. Cross* (1981), 100 Ill. App. 3d 83, the court in imposing sentence noted the victim of a battery of which the defendant had been earlier convicted had died, but stated the court " '*** will not take into account the charges which were not proved.' " (100 Ill. App. 3d 83, 91.) The *Cross* court felt the judge's comments were ambiguous and uncertain, and it was impossible within his phraseology to determine what weight he had given the death noted. The court here, however, did not consider any charges of which the defendant had not already been convicted,

whereas in *Cross*, the defendant had been convicted of battery, not murder, and as to that latter offense he was " '*** "clothed in a presumption of innocence." ***' " 100 Ill. App. 3d 83, 92, quoting *People v. Gant* (1974), 18 Ill. App. 3d 61.

The fact of the defendant's conviction for murder was not altered by the supreme court's vacation of the death penalty. As such, it was a part of the defendant's "history of prior criminal activity," a properly considered factor in aggravation of his sentences for the instant offenses. Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2.

The defendant asserts the State's concession with regard to Issue III creates an additional basis for the vacation of the remaining sentences and remandment for a resentencing hearing. In support, he cites *People v. Young* (1983), 115 Ill. App. 3d 455, *People v. Reynolds* (1983), 116 Ill. App. 3d 328, and *People v. Alejos* (1983), 97 Ill. 2d 502. Each of those cases involved remand for resentencing after a prior or contemporaneous conviction which was considered by the court in imposing sentence was either vacated or reversed.

In a motion taken with this case, the State moved to strike this argument of the defendant as being raised for the first time in a reply brief, contrary to the provisions of Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7).

The defendant responds that his argument does not "raise a new issue" but is a proper reply to an argument presented in the brief of the appellee (*i.e.*, the State's concession of Issue III in conformance with Supreme Court Rule 341(g) (87 Ill. 2d R. 341(g))).

It is well settled that issues raised for the first time in the appellant's reply brief shall be deemed waived on appeal. (87 Ill. 2d R. 341(e)(7).) However, the rule is an admonition to the parties and not a jurisdictional bar. (*Hux v. Raben* (1967), 38 Ill. 2d 223.) Issues first raised in a reply brief may be addressed if a just result dictates consideration of all the issues. *People v. Thiem* (1980), 82 Ill. App. 3d 956, 959.

■ Although the remand for resentencing appears to be a "new issue," the defendant arguably could not have anticipated the State's concession of the underlying issue. Thus, the issue may reasonably be viewed as having been properly raised in the reply brief since "it grows out of and is responsive to" the State's concession. *Cf. People v. Maxwell* (1980), 89 Ill. App. 3d 1101, 1104 (where the court allowed the defendant's motion to add the issue of defense counsel's competency (for failing to offer jury instructions on a lesser-included offense) with the admonition that the issue should have been raised in his reply brief because "it grows out of and is responsive to the

waiver argument made by the State in its appellee's brief").

Accordingly, the issue will not be stricken as waived.

■ A remand for resentencing due to the vacation of the defendant's armed violence conviction and sentence is not necessary. The defendant's citation to *People v. Young* (1983), 115 Ill. App. 3d 455, provides only minimum support for his position, since no reason or citation of authority was given there for the court's remand for resentencing. *People v. Reynolds* (1983), 116 Ill. App. 3d 328, also cited by the defendant, is factually distinguishable. There the court remanded for resentencing because in imposing an extended-term sentence, the trial court considered a prior escape conviction of the defendant which was later reversed. The final case cited by the defendant, *People v. Alejos* (1983), 97 Ill. 2d 502, likewise fails to support his position on this issue. In considering there whether to remand the cause for resentencing after reversing the defendant's armed violence conviction (which was predicated on voluntary manslaughter and which the supreme court held was contrary to the legislative intent that armed violence not apply to voluntary manslaughter since it is not a premeditated felony), the supreme court declined to decide whether the standard for remand for resentencing is either (a) the inability to determine affirmatively from the record whether the sentence was influenced by the consideration of improper factors, or (b) whether the defendant must come forward with convincing evidence that the judge or jury was so influenced. (97 Ill. 2d 502, 513.) It declined to do so because the record before it satisfied the latter standard, due to the emphasis the sentencing judge placed upon the defendant's use of a gun and the likely influence that fact exerted on the sentence for voluntary manslaughter.

Under either standard as noted in *Alejos*, review of the sentencing hearing here makes it clear the court was not improperly influenced by the armed violence conviction in imposing sentences for the other convictions. The court stated:

> "I'm going to impose a sentence in the Department of Corrections for the offense of rape, a Class 1 felony, for a period of not less than 50 years nor more than 150 years; under the aggravated kidnapping, a minimum sentence of from 50 to 150 years—an indeterminate sentence of from 50 to 150 years; for armed violence wherein the underlying charge was the rape offense, from 50 to 150 years. And those three would run concurrent.
>
> For the offense of attempt murder, I'm going to impose a sentence of not less than 50 nor more than 150 years. There is

no question in the Court's mind that these are separate offenses. The—the armed violence, the rape, the aggravated kidnapping were all as a result of one; and that's why I'm considering that for concurrent sentences and imposing a concurrent sentence. The attempt murder by the evidence was the intent that was formed at some time. It certainly manifested itself after the other offenses had been committed and justifies a consecutive sentence to those. The attempt murder is consecutive to the—the penalty that I imposed on the rape, the aggravated kidnapping and the armed violence.

Under the armed robbery offense—and again, I'm going to impose a sentence of from 50 to 150. I am going to make that concurrent with the other offenses. I—it would run concurrent with the rape, the aggravated kidnapping and the armed violence.

And then there will be the consecutive sentence imposed for the attempt murder—from 50 to 150 years. I'll impose no fine. These sentences are to run consecutive with any penalty that's been imposed in Boone County under 78—CF—37."

In our opinion, it is clear the court separately considered each offense. Further, its acknowledgement that the armed violence, the rape, and the aggravated kidnaping were "all as a result of one" and, therefore, the sentences would be concurrent, indicates to us that the length of the sentences imposed for the defendant's other convictions was not affected by the armed violence conviction. A similar result was reached in previous cases which have addressed this issue. See, e.g., People v. Griffin (1983), 117 Ill. App. 3d 177, 184; People v. Pruden (1982), 110 Ill. App. 3d 250, 254-55; People v. Jones (1982), 108 Ill. App. 3d 880, 891; People v. Kosanovich (1979), 69 Ill. App. 3d 748, 750.

In sum, we conclude remand for resentencing is not warranted.

### III. Vacation Of Armed Violence Conviction

█ The State concedes on the authority of People v. Mormon (1982), 92 Ill. 2d 268, that the defendant's conviction for armed violence, based on the offense of rape, must be vacated as being a lesser-included offense of rape. We concur. The Mormon court, finding indistinguishable its decision in People v. Donaldson (1982), 91 Ill. 2d 164, vacated the defendant's conviction for armed violence based on rape. The court determined that when a weapon is used to overcome the will of a rape victim, the use of the weapon is an element of "force" specified in the rape statute and the defendant, having been convicted

of rape, cannot also be convicted of armed violence.

Because the State concedes this issue, the defendant asserts in his reply brief that the State's request that "costs be taxed accordingly" must be denied. He cites in support *People v. Smith* (1983), 113 Ill. App. 3d 917.

Recovery of costs after affirmance or reversal on appeal is covered by section 5—120 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 5—120.) The statute (formerly codified as Ill. Rev. Stat. 1981, ch. 33, par. 22) makes no distinction between civil or criminal cases. (*People v. Nicholls* (1977), 45 Ill. App. 3d 312, 316.) Further, it is notable that former section 24 of that chapter, which provided for apportionment of the costs between the parties in the discretion of the court when there was a partial affirmance or a partial reversal, was repealed in 1976. Ill. Rev. Stat. 1975, ch. 33, par. 24.

The *Smith* case cited by the defendant, supports his contention here. In that case, the court denied the State's request for costs since the defendant prevailed on one of the issues raised on appeal. Accordingly, since the defendant here has prevailed on one of the issues raised on appeal, the State's request for costs is denied.

The judgment and sentence of the circuit court of Winnebago County for the offense of armed violence is vacated; the judgments and sentences for the offenses of rape, attempted murder, aggravated kidnaping, and armed robbery are affirmed. The State's motions to strike and for costs are denied.

Judgments affirmed in part and vacated in part.

LINDBERG and VAN DEUSEN, JJ., concur.